Forest *et al. v.* Tinkham *et al.*

THOMAS L. FOREST *et al.*, Plaintiffs in Error, *v.* EDWARD I. TINKHAM *et al.*, Defendants in Error.

ERROR TO SUPERIOR COURT OF CHICAGO.

A chattel mortgage, not acknowledged and recorded, though obligatory upon the parties to it, is void as to third persons.

THIS is a suit in equity, brought by the plaintiffs Forest to enforce the payment of a chattel mortgage, alleged to have been given by Carl, Fabian & Co., to secure a debt of $5,000, with interest, payable to the Forests, April 1st, 1861.

The Superior Court, on the hearing, dismissed the bill, and this is assigned for error.

The facts of the case are sufficiently stated in the opinion of the Court.

W. T. BURGESS, for Plaintiffs in Error.

ARRINGTON & DENT, and C. C. BONNEY, for Defendants in Error.

WALKER, J. The mortgage executed by Carl, Fabian & Ellis, to secure the payment of a debt which they owed to Forest, was not acknowledged before a justice of the peace of the precinct in which either of them resided. It was not recorded, nor had Forest acquired possession of the property, when Tinkham and Ambler purchased of Carl, Fabian & Ellis. Failing in these requirements, whilst it was binding upon the parties to it, yet it was void as to third persons. But it is insisted that the evidence shows, that Tinkham and Ambler, at the time they made the purchase, not only recognized its validity, but agreed to pay it as a part of the consideration of the purchase. It appears from the evidence of Clarkson, that while the negotiation for the purchase was progressing, that Fabian produced from his pocket the mortgage, from Fabian, Carl & Ellis, to Forest, and Fabian stated that the paper amounted to nothing, or had no validity, or used language of that purport, and also stated that it had been given to him by Forest to be canceled, and commenced tearing off the signatures to the instrument, when Ellis remonstrated, and he desisted. This witness states, that he then distinctly understood from the makers, that the mortgage had no validity as a lien on the property. That the purchase of the property by Tinkham and Ambler was predicated upon that understanding; and this evidence stands uncontradicted.

Clarkson also testifies, that after the terms of the purchase

had been agreed upon, Baker came in, and witness stated them in detail. In doing so, he spoke of the mortgage of about $5,000, given to secure the purchase money, which Tinkham & Co. expected to take care of and to pay. That he did not mention the Forest mortgage, but that Baker or Ellis spoke of it, and Baker requested to see it. That witness replied, that Tinkham & Co. knew of it, and that it would take care of itself; that if it was valid, they would have to pay it. This witness thinks, that this was about all that was said after Baker came in, accompanied by Ellis. Tree states in his evidence, that Carl expressed surprise at the existence of this mortgage, and denied having executed it, but said that he had once signed a blank, for the purpose of being filled up as a chattel mortgage. That during the conversation, Fabian, in various ways, stated that the mortgage was of no validity. This witness also states, that during the interview, he knew of no proposition in reference to that mortgage.

Opposed to this evidence is that of Baker and Ellis. The former was the attorney of Fabian and Ellis, and was present, to protect their interest, at the interview spoken of by Clarkson and Tree. He states, particularly, that Clarkson stated that Tinkham and Ambler, in purchasing the property, would have to discharge other and prior incumbrances upon the property. That the Forest mortgage was spoken of as one of them. That it was not recorded, but they knew all about it. That he spoke of another mortgage on the same property for a like sum. That Clarkson and Ambler, in estimating the cost of the property, included both sums.

Ellis, one of the members of the firm of Carl, Fabian & Ellis, and one of the makers of the mortgage, testifies that he was present at the interview spoken of by the other witnesses. He says, the debt to Forest was just, and that he made it a point in the sale that it should be paid, and refused to proceed with the arrangement, unless that was conceded. That such was the arrangement when the sale was consummated.

This evidence is conflicting, and each side is supported by the same number of witnesses, apparently equally intelligent, with equal opportunities to be informed. Ellis obviously has

an interest, to the extent of the Forest debt, in establishing the liability of Tinkham and Ambler to pay this money. His firm owes the money, and if the liability is fixed upon Tinkham and Ambler to pay it, as a part of the purchase-money for goods, it will discharge Ellis and his partners from its payment. Having such an interest, we can see that he would have a strong desire to see Tinkham and Ambler held liable. This desire would of course induce him to notice and remember anything that was said, even detached portions of the conversation, which might be construed into a liability on their part. But in no event can his evidence, biased as it most likely is by so important an interest, have accorded to it the same weight as if he was indifferent to the event of the suit.

The other witnesses to this point are attorneys, present at the time to protect the interest of their respective clients. Clarkson, from his evidence, seems to have been as fully acquainted with all the circumstances surrounding the transaction as any person connected with the arrangement. He says, Ambler agreed to pay the mortgage given to secure the purchase-money, and said he would have to pay Forest, if his mortgage was valid. Clarkson made the proposition, and as he had learned what his clients were willing to give, and had considered the effect of the proposition before it was made, it must be supposed he was informed as to all particulars. On the other hand, Baker only heard the proposition made, and may not have observed the qualification annexed, that they would have to pay it, "if it was valid." Clarkson's testimony seems to be more connected and full than that of the others, evincing a more retentive memory. He is also supported by the evidence of Tree, when he says he was present and heard no proposition that this mortgage should be paid. Whilst the evidence is of that character which leaves the mind in doubt, still it is not of that character which requires that the decree of the court below should be disturbed. It is therefore affirmed.

*Decree affirmed.*