JOHN B. FREY COMPANY, INC. *vs.* S. SILK, INCORPORATED.

Suffolk.    March 6, 1923. — June 5, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Practice, Civil,* Exceptions: disallowance, petition to establish. *Conflict of Laws. Evidence,* Presumptions and burden of proof, Foreign law. *Sale,* Time when title passes.

While a bill of exceptions ought to state with conciseness and clarity the points of law actually raised with sufficient evidence to enable this court to decide with understanding whether the substantial rights of the parties have been injuriously affected in the light of the issues and the course of the trial, it ought not to be encumbered and obscured by irrelevant and unnecessary matter.

A bill of exceptions was dismissed by a judge of the Superior Court on the ground that the entire charge to the jury was reasonably necessary as a part of the record in order to set forth the truth with respect to the rulings to which exceptions were taken. A petition to establish the exceptions was allowed by this court after an examination of the record, it being *held*, that the bill presented in succinct form the questions of law actually raised at the trial, enough of the charge being set forth to make such questions clear.

When the construction of an oral contract of sale of merchandise in issue at a trial is to be determined by the law of another State, where the contract was made, and no evidence of the law of that State is introduced, such construction is governed by the common law of this Commonwealth, which in such circumstances is presumed to be the same as that of the State where the contract was made.

At the trial of an action by a Boston merchant against a produce dealer in the State of New York for the purchase price of beets alleged to have been purchased by the defendant of the plaintiff, it appeared that when the beets arrived in Boston they were unmerchantable, and the time when title passed was a controlling issue. The goods, which were in a cold

storage warehouse, were ordered as an entire lot through persons who upon the evidence might have been found to have been agents for the respective parties, and were sold for prompt shipment. There was evidence tending to show that, at the request of the agent for the defendant, shipment was delayed. Terms of sale included " f.o.b. at the place of storage." Shipment was by a bill of lading containing the words, " allow inspection," and the same in substance was on the freight bill. It did not appear that the contract of sale was in writing. There was evidence from a qualified expert in the trade in Boston to the effect that it was a custom known throughout the vegetable trade to allow inspection " at the delivery end . . . to see if the goods are as contracted for both as to quantity and quality." The judge left to the jury to determine whether it was the agreement of the parties that title should pass when the beets were put on the car for shipment by rail to the defendant or after the defendant had inspected them on arrival in Boston with the right to reject them if " not up to standard," and refused requests by the plaintiff that he rule, in substance, that title passed at the time of the contract of sale, and that he charge the jury " that the title may have passed when the goods were first appropriated to the defendant in the storage warehouse." *Held*, that

(1) There was evidence warranting a finding that title to the goods passed to the defendant at the time of the contract of sale;

(2) It was prejudicial error to refuse to leave that question to the jury under appropriate instructions as to the intention of the parties in the contract made, as to the general law concerning the time of the transfer of title, as to the effect of delivery to the carrier and as to the purpose and bearing of the right of inspection by the defendant, if it were found to exist.

PETITION, filed in this court on January 11, 1923, to establish exceptions saved at the trial before *Fox*, J., of an action by the petitioner against S. Silk, Incorporated, described below, the bill of exceptions filed by the petitioner having been disallowed by the trial judge on the ground that the entire charge to the jury was necessary in order to set forth the truth with respect to the rulings to which exceptions were taken; also an action of

CONTRACT to recover the price of a carload of beets sold by the plaintiff to the defendant. Writ dated March 15, 1920.

Material evidence at the trial in the Superior Court is described in the opinion. The plaintiff seasonably requested the trial judge to rule as follows:

" Upon all the evidence the intention of the parties was that title to the beets should pass to the defendant when the contract was made. There is no evidence upon which a jury could find a contrary intention."

" The fact that this was an unconditional sale of specific goods in a deliverable state shows that the intention of the parties was that title should pass to the defendant at the time the contract of sale was made, and it is immaterial that the time of payment and shipment was postponed."

" Title to the beets passed to the defendant at the time the contract for their purchase was made."

" Although title to the beets passed to the defendant at the time the contract was made, the plaintiff had a lien on them for the price and had a right to keep possession of them until the price was paid."

" All risk of loss or injury to the goods was in the defendant from the time the contract was made. If the beets were damaged or destroyed by freezing or otherwise after that time, the defendant bears that loss."

The trial judge refused so to rule.

The bill of exceptions stated that the " following is all that part of the charge which dealt with the question as to whether the jury could find that title passed prior to shipment: '. . . The question presented is whether the condition in which these beets were when they arrived in Boston indicates that they were not merchantable beets when they were shipped on board the cars at Rochester, . . . If you find that they were not merchantable when they were shipped at Rochester, then I instruct you, without regard to the question of the time when the title passed, the plaintiff would not be entitled to recover in this case . . . ' Subsequently the attention of the trial judge was called to this point by counsel for the plaintiff as follows: ' I except to the refusal of the court to charge that the title may have passed when the goods were first appropriated to the defendant in the storage warehouse,' upon which the trial judge said: ' I think that I will say something about your request. . . . the general title of the goods in the buyer may be held to have passed from the time of delivery to the railroad.' The plaintiff further seasonably requested the judge to rule: ' If title to the goods has passed to the defendant, all risk of loss and other incidents of ownership fall upon the defendant and it is immaterial that he has a

right of inspection before paying the purchase price. . . . '
The trial judge said to the jury on this point: ' One of the
question is, what was the fair agreement between the
parties? Was it that the title was not to pass until the
buyer had an opportunity to inspect the goods and to reject
them if they were not up to standard? If you find that that
is so . . . it was agreed that the beets were bad when they
arrived in Boston . . . then I can see no ground on which
the plaintiff is entitled to recover.' "

The jury found for the defendant. Exceptions alleged
by the plaintiff were established by this court.

*V. C. Brink*, for the plaintiff.

*S. A. Dearborn*, for the defendant.

RUGG, C.J. This is a petition to establish exceptions.
The trial judge disallowed the exceptions on the ground that
the entire charge to the jury was reasonably necessary as a
part of the record in order to set forth the truth with respect
to the rulings to which exceptions were taken. An examina-
tion of the exceptions filed, together with the copy of the
entire charge attached to the petition, shows that there was
error in the disallowance. The exceptions present in suc-
cinct form the questions of law actually raised at the trial.
Enough of the charge was set forth to make these questions
clear. A bill of exceptions ought to state with conciseness
and clarity the points of law actually raised, with sufficient
evidence to enable this court to decide with understanding
whether the substantial rights of the parties have been in-
juriously affected in the light of the issues and the course of
the trial. They ought not to be encumbered and obscured
by irrelevant and unnecessary matter. The bill of excep-
tions as filed was a commendable and successful attempt
to comply with this principle of practice, which has been
enforced and exemplified in numerous decisions. It is im-
portant in the interests both of justice and economy. *Cor-
nell-Andrews Smelting Co.* v. *Boston & Providence Railroad*,
215 Mass. 381, 387. *Isenbeck* v. *Burroughs*, 217 Mass. 537.
*Romana* v. *Boston Elevated Railway*, 218 Mass. 76, 81. *Cor-
sick* v. *Boston Elevated Railway*, 218 Mass. 144. *Taylor* v.
*Pierce Brothers, Ltd.* 219 Mass. 187. *Rosen, petitioner*, 236

Mass. 321. The petition is granted. The bill of exceptions as disallowed is established. *Moneyweight Scale Co. petitioner*, 225 Mass. 473.

The plaintiff seeks to recover the purchase price of a carload of beets sold by it to the defendant. There was evidence tending to show that the order of the defendant to one Pratt then in the State of New York was a telegram dated January 10, 1920: " Buy three or more beets for me and get as late delivery as possible." The carload here in question was bought by Pratt of one McKuen, who was an agent for the plaintiff. It was an entire lot of beets stored in Sodus Cold Storage at Sodus, New York. The terms were $3 per sack f.o.b. Sodus. The beets were sold for prompt shipment, but the plaintiff held them at the request of Pratt, first until the next week, Pratt promising to send check for the beets, and then until February 18, 1920, when they were shipped. Pratt said in the meantime that McKuen need not worry as the beets belonged to the defendant. The car arrived in Boston on February 29, 1920, when it is agreed that the beets were not merchantable. The invoice to the defendant contained the words, " Car No. A. R. T. 25292. Loaded at Sodus, New York, via. B. & A. Dely. . . . Allow inspection." At the time of shipment the plaintiff drew on the defendant by draft, which read in part: " At sight, hold for arrival of car A. R. T. 25292 pay to the order of . . . " There was also a freight bill on which were the words, " inspection allowed." There was evidence from a qualified expert in the trade in Boston to the effect that it was a custom known throughout the vegetable trade to allow inspection " at the delivery end . . . to see if the goods are as contracted for both as to quantity and quality."

Issues at the trial were whether the beets were merchantable at the time of sale and whether they were or became unmerchantable while they were at the risk of the plaintiff, or after that risk had passed to the defendant. The settlement of these issues depended in part upon the question when title passed, or was to pass, under the contract of sale from seller to buyer.

In various forms of words the plaintiff asked for a binding instruction to the jury that title to the beets passed to the defendant at the time of the contract of sale.   These requests were denied.   Instructions were given in substance that the question was whether it was the agreement of the parties that title should pass when the beets were put on the car for shipment by rail to the defendant, or after the defendant had inspected them on arrival in Boston with the right to reject them if " not up to standard." The jury thus were not permitted to find that the title passed at the time of contract.

The meaning, force and effect of this contract would ordinarily be ascertained according to the law of the State of New York, where it was made.   *Kline* v. *Baker*, 99 Mass. 253.   That law is a fact and must be proved like any other fact.   The court cannot take cognizance of the law of a foreign State in the absence of evidence.   No evidence was introduced as to the law upon this subject in the State of New York.   Therefore the case must be decided in accordance with the common law of this Commonwealth because the common law of a sister State is presumed in the absence of evidence to be the same as that of this Commonwealth. *Royle* v. *Worcester Buick Co.* 243 Mass. 143, 146.   There is no presumption that the law of another State corresponds with a statute of this Commonwealth.   *Murphy* v. *Collins*, 121 Mass. 6.

The common law of this Commonwealth is, as was said by Chief Justice Gray in *Sherwin* v. *Mudge*, 127 Mass. 547, 549, " By a contract for the sale of specific goods, the title doubtless passes as between the parties, without any actual or constructive delivery, or payment of the price, unless it can be shown that their intention is different."   *Parsons* v. *Dickinson*, 11 Pick. 352, 354.   *Folsom* v. *Cornell*, 150 Mass. 115.   *Mitchell* v. *LeClair*, 165 Mass. 308.   *Wesoloski* v. *Wysoski*, 186 Mass. 495.   *Bristol Manuf. Corp.* v. *Arkwright Mills*, 213 Mass. 172.   This rule of the common law is embodied in the sales act.   G. L. c. 106, § 21, Rule 1, where it is phrased in these words: " If there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the con-

tract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be delayed."

The evidence in the case at bar appears to have been undisputed that the negotiations between these parties related to an entire lot of beets on storage. They were thus specific, defined and separated goods, ready for delivery. Their shipment might have been found to have been delayed solely for the convenience of the defendant. In this connection it might also have been found that Pratt was the agent of the defendant in the transaction, although that was for the jury in view of conflicting evidence.

It follows that the jury ought to have been permitted to find on all the evidence that the title passed at the time the contract was made. An unqualified instruction to the effect that it did so pass could not have been given. There was the evidence of custom as to inspection, and the words of the draft, of the invoice and of the freight bill as to inspection.

It would have been permissible for the jury to have found that, in view of all the circumstances, it was the intention of the parties that the right of inspection was either " a condition precedent qualifying the buyer's obligation either to take title or to pay the price, or a condition subsequent authorizing the return of the goods and the recovery of the price if title to the goods has passed, or the price been paid." Williston on Sales, § 471. *Paddleford* v. *Lane & Co. Inc.* 223 Mass. 113, 117. In the case at bar, whether the right of inspection was a condition precedent or a condition subsequent was or might be a question of importance, because on its decision might turn the determination of the further question whether in the meantime risk of loss or deterioration rested upon the vendor or the vendee. If the right of inspection be a condition precedent, the risk of loss is upon the seller, but, if subsequent, this risk is upon the buyer under ordinary conditions in the absence of evidence showing a contrary purpose.

There is nothing on the record to show that this contract was in writing. The persons by whom it was made testified concerning the contract. It may have been found to have

been made in view of the custom of the vegetable trade as to inspection. The words of the invoice, draft, and freight bill as to inspection were permissible sources of information as to its terms. The terms of the contract, including the time of transfer of title, and the nature and purpose of the inspection, all were questions of fact to be ascertained from the entire evidence and the most rational inferences to be drawn therefrom. No hard and fast rule of law could have been laid down. *Fechteler* v. *Whittemore,* 205 Mass. 6, 10. It was the duty of the jury to determine what was the intention of the parties in the light of correct principles of the controlling law. The jury ought to have been instructed in general terms that it was their duty to decide what contract the parties intended to make, giving due weight to what was said, written and done by each of them bearing upon the terms of the agreement and to all material circumstances. Instructions as to the general rule of law concerning the time of the transfer of title ought to have been given conformably to the decisions already quoted in part and cited.

Instructions also should have been given as to the effect of delivery to the common carrier by the seller for transportation to the buyer. A possible inference from all the evidence was that the vendor was to deliver the beets to the common carrier for transportation to the defendant as vendee, and that the freight was to be paid by the latter. If that was found to have been the agreement of the parties, then delivery to the carrier might have been found to have been the time of passage of title. *Edelstone* v. *Schimmel,* 233 Mass. 45, 49, and cases cited. *St. John Brothers Co.* v. *Falkson,* 237 Mass. 399, 401. If this were found to be the fact, then also loss would have been upon the defendant, provided the beets were at the time of such delivery in merchantable condition. *Levy* v. *Radkay,* 233 Mass. 29.

Further instructions should have been given as to the purpose and bearing of the right of inspection by the defendant, if that right was found to exist. The jury should have been directed to find whether that right of inspection by the defendant was intended by the parties to have been a con-

dition precedent to the passing of title or a condition subsequent to the passing of title. If it was a condition precedent, then the beets must have been merchantable on arrival at destination in order to conform to the contract. In such case the risk of deterioration and loss' would be wholly upon the seller, and the buyer would have the right to reject on inspection if the beets were not merchantable and otherwise did not conform to the terms of the contract. If, however, the intention of the parties, in view of the general rule as to time of passage of title, was that the right of inspection was a condition subsequent, then the risk of deterioration and loss would rest upon the defendant. His right of inspection would be for the purpose of determining whether at the time the title passed (that is to say, at the time the contract of sale was made or at the time delivery was made to the railroad for transportation to the defendant, whichever the jury might find), the beets conformed to the contract and were merchantable. *Lord* v. *Edwards*, 148 Mass. 476. *Sims* v. *Miller*, 151 Ark. 377, 389. See *Alden* v. *Hart*, 161 Mass. 576.

The testimony as to the custom of allowing inspection at place of destination was admissible. *Roach* v. *Lowe*, 226 Mass. 598, 604. But it was not decisive upon this point. The terms of that custom in respect of the precise point whether the inspection was a condition precedent or a condition subsequent was not clear, but indefinite and obscure. Perhaps it does not reach this point at all. Moreover, in view of express testimony of McKuen as to conversation between him and Pratt, to the effect that title passed at the time of the contract of sale, and of other evidence, it would in any event have been a question of fact for the jury to settle when the title and consequent risk passed to the defendant.

What has been said of course is not intended to cover every branch of a possible contract as to the effect of the right of inspection. It seems to us to cover the practical aspects of the case at bar as presented on the record.

It follows that, while the requests of the plaintiff for instructions could not rightly have been given in the form

presented, yet they called attention to a principle of law which ought to have been dealt with in the charge. There was error in confining the attention of the jury solely to the time of shipment and the time of inspection as the times when title might pass by the terms of the contract, and in denying them opportunity to find that it was the intention of the parties that the title might pass at time of the contract of sale.

*Exceptions sustained.*